IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DISNEY ENTERPRISES, INC., *et al.*,

                    Plaintiffs,

                                                    Civ. Action No.
                                                    6:05-CV-1489 (NAM/DEP)

          vs.

JAMES MERCHANT,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFFS:

LOEB, LOEB LAW FIRM              ALEXANDRA N. DENEVE, ESQ.
345 Park Avenue
New York, NY 10154-0037

KERNAN, KERNAN LAW FIRM          KEVIN G. MARTIN, ESQ.
258 Genesee St., Suite 600
Utica, NY 13502

FOR DEFENDANTS:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

          Plaintiffs Disney Enterprises, Inc., ("Disney") and Twentieth Century

Fox Film Corporation ("Twentieth Century"), owners of copyrights and of

exclusive rights under the Copyright Act with respect to the copyrighted motion pictures THE INCREDIBLES and FEVER PITCH, respectively, have brought this action against defendant James Merchant alleging copyright infringement, in violation of the Copyright Revision Act of 1976 (the "Act"), 17 U.S.C. §101 *et seq.*[1]  Plaintiffs' complaint asserts infringement of its protected rights through defendant's use of an online media distribution system to download the copyrighted works and make them available to others.  In their complaint, plaintiffs seek various relief available under the Act including, *inter alia*, statutory damages and a permanent injunction.

Defendant's liability for copyright infringement has been established as a result of his default, and the matter has been referred to me for the issuance of a report and recommendation addressing plaintiffs' request for relief.  For the reasons set forth below I find that since plaintiffs seek only statutory damages – albeit in an amount greater than the minimum specified by statute – no evidentiary hearing is required, and recommend a finding that its request for statutory damages is well-supported by the materials now before the court, and should be granted.  I further recommend the entry of a permanent injunction, based upon the

---

[1]     According to the registration certificate applicable to the work, Disney is a co-owner, together with Pixar Animation Studios, of the copyright to the film THE INCREDIBLES.  Complaint (Dkt. No. 1) Exh. A.

allegations set forth in their complaint and the presumption that unless such relief is awarded, Disney and Twentieth Century will continue to experience irreparable harm, and that plaintiffs be awarded costs of the action, including a reasonable attorneys' fee.

I.    BACKGROUND[2]

Plaintiffs Disney and Twentieth Century are among the world's leading creators and distributors of motion pictures.  Complaint (Dkt. No. 1) ¶ 4.  Both of the plaintiffs are Delaware corporations with principal places of business in California.  *Id.* ¶¶ 5, 6.

At the times relevant to their claims, plaintiffs Disney and Twentieth Century were the holders of the exclusive rights to reproduce and distribute the motion pictures THE INCREDIBLES and FEVER PITCH, respectively.  *Id.* ¶ 9.  The film THE INCREDIBLES is protected by a registered copyright, as evidenced by copyright registration certificate PA 1-250-536, issued on or about December 29, 2004 to Disney and Pixar

---

[2]    Unless otherwise noted the following recitation, which incorporates my findings of fact, is derived directly from the allegations of plaintiffs' complaint.  By virtue of his default, defendant is deemed to have admitted the well-pleaded factual allegations contained in plaintiffs' complaint, except as to those relating to damages.  *TransAtlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, *Div. of Ace Young, Inc.*, 109 F.3d 105, 108 (2d Cir. 1997); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *see also DirecTV, Inc. v. Sheffield*, No. Civ.03-5738, 2005 WL 563108, at *2 (D. Minn. Mar. 8, 2005) (citing 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2688 (3d ed. 2004) and Fed. R. Civ. P. 8(d)).

Animations Studios.  *Id.* ¶ 9 and Exh. A.  The film FEVER PITCH is

similarly protected, as evidenced by a copyright registration certificate PA

1-266-283, issued on or about April 8, 2005 by the United States

Copyright Office to Twentieth Century.  *Id.*  Both protected works contain

copyright notices advising viewers that they are protected under the

copyright laws.  *Id.* ¶ 10 and Exh. A.

Despite the protections afforded to the plaintiffs under the Act and

those warning notices, the defendant, without plaintiffs' permission or

consent, has utilized, and continues to use, an online media distribution

system to distribute the motion pictures THE INCREDIBILES and FEVER

PITCH to the public, including by making them available for distribution to

others.  Complaint (Dkt. No. 1) ¶ 11.  Through his actions, which are both

willful and in disregard of plaintiffs' protected rights, defendant has caused

plaintiffs to suffer irreparable harm that, unless defendant is enjoined from

further infringement, will continue.  *Id.* ¶¶ 12-14.

II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on November 30, 2005.  Complaint

(Dkt. No. 1).  According to a return of service filed with the court, the

summons and complaint were thereafter served upon the defendant on

December 17, 2005.  Dkt. No. 4.  At plaintiffs' request, based upon his

failure to answer or otherwise properly appear in a timely manner,

4

defendant's default was entered by the clerk on June 30, 2006.  Dkt. Nos. 5, 6.

On September 20, 2006 plaintiffs moved for the entry of default judgment granting the relief requested in their complaint.  Dkt. No. 7.  That motion, which was not opposed by the defendant, resulted in the issuance of an order on February 13, 2007 by Chief District Judge Norman A. Mordue granting plaintiffs' motion and referring the matter to me for the purpose of determining the proper amount of damages, costs and attorneys' fees to be awarded, and to make proposed findings addressing plaintiffs' request for the entry of a permanent injunction.  Dkt. No. 9.

III.   DISCUSSION

A.   Statutory Damages

Under the remedial scheme crafted by the drafters of the Act and its predecessor, the Copyright Act of 1909, in the event of a proven infringement a copyright owner is permitted to recover either actual damages plus additional profits realized by the infringer or, alternatively, statutory damages, and to choose between these two forms of monetary relief.  17 U.S.C. § 504(a).  Addressing statutory damages, the Act provides, in relevant part, that

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory

5

> damages for all infringements involved in the
> action, with respect to any one work . . . in a sum of
> not less than $750 or more than $30,000 as the
> court considers just.

17 U.S.C. § 504(c)(1); *see Venegas-Hernandez v. Sonolux Records*, 370

F.3d 183, 191 (1st Cir. 2004).  Under this provision, "[a] plaintiff may elect

statutory damages 'regardless of the adequacy of the evidence offered as

to his actual damages and the amount of the defendant's profits.'"

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,

259 F.3d 1186, 1194 (9th Cir. 2001) (quoting Melville B. Nimmer & David

Nimmer, *Nimmer on Copyright* § 14.04[A] (2000)).

Statutory damage awards serve both to fulfill a compensatory or

restitutionary role and to discourage wrongful conduct.  *Venegas-*

*Hernandez*, 370 F.3d at 195-96; *Cass County Music Co. v. Khalifa*, 914 F.

Supp. 30, 34-35 (N.D.N.Y.) (McAvoy, C.J.), *aff'd*, 112 F.3d 503 (2d Cir.

1996).  To effectuate those twin compensatory and punitive purposes, the

Copyright Act establishes a distinctly expansive range within which

statutory damages may be awarded.[3]  *See Venegas-Hernandez*, 370 F.3d

---

[3]      That deterrence of infringing conduct is an important element of statutory
damages under the Act is demonstrated by the fact that since adoption in 1976 of the
present Copyright Act Congress has twice increased the statutory damages range
under section 504(c)(1), increasing the minimums and maximums, respectively, from
$250 to $500 and $10,000 to $20,000 in 1988, *see* P.L. 100-568, 102 Stat. 2853, 2860
(Oct. 31, 1988), and again in 1999 to the current range of between $750 and $30,000,
Pub. L. 106-160, 113 Stat. 1774 (Dec. 9, 1999).

at 195-96.

The determination as to the amount of damages to be awarded, within the prescribed boundaries, rests entirely within the court's discretion. *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231-32, 73 S. Ct. 222, 224-25 (1952); *Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 2-3 (1st Cir. 1983).  A decision of where, within the broad range available under the Act, to affix statutory damages is informed by factors which would bear upon the infringer's culpability and the need for deterrence, as well as the amount required to adequately compensate the plaintiff, and can include, in an appropriate case, an examination of the expenses saved and profits realized by the infringer in connection with his or her actions, revenues lost by the plaintiff as a result of defendant's conduct, and the infringer's state of mind, including whether the infringement was willful. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116-17 (2d Cir. 1986) (citations omitted).

As a threshold matter, the court must determine whether a hearing, or inquest, is required in order to determine an appropriate amount of statutory damages to be awarded, or instead whether such a determination can be made upon the materials presently before the court. In cases where minimum statutory damages are sought, courts have generally concluded that once infringement is established it is

7

unnecessary to conduct a trial or, in the case of a default judgment, a damage inquest or hearing.  *Motown Record Co. v. Armendariz*, No. SA-05-CA-0357, 2005 WL 2645005, at *2 (W.D. Tex. Sept. 22, 2005); *Sony Music Entertainment Inc. v. Elias*, No. CV03-6387, 2004 WL 141959, at *4 (C.D. Cal. Jan. 20, 2004). *Contrast Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999) (while, in the case of a default judgment, substantive allegations in a plaintiff's complaint are accepted as true, any averments with regard to the amount of damages are not deemed established, and instead the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty in a case where actual damages are awardable).

In this action plaintiffs have exercised their right to elect to recover statutory damages, in lieu of actual damages and/or the infringer's profits, but seek $6,000, an amount obviously exceeding the minimum statutory damages allotment of $750 per work.[4]  In cases where an amount greater than the specified minimum is sought, the determination of whether to conduct a hearing, or instead to find that the record before the court is sufficient to adequately inform its analysis, rests with the discretion of the

---

[4]       Statutory damages are awardable on the basis of the number of protected works infringed, rather than the number of infringements.  *WB Music Corp. v. RTV Communication Group, Inc.*, 445 F.3d 538, 540 (2d Cir. 2006); *Venegas-Hernandez*, 370 F.3d at 192-93.

court. *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (1st Cir. 2002) (no abuse of discretion to decline a request for a hearing when awarding statutory damages within the prescribed statutory damage range); *see also Morley Music Co.*, 725 F.2d at 3 ("Although there need not be the kind of hearing required if factual damages were the issue, there must, we think, be either some hearing or sufficient affidavits to give the trial judge an adequate reference base for his judgment.") (citations omitted).   While stating that they are fully prepared to participate in an evidentiary hearing to support their damage request, if required by the court, plaintiffs have submitted affidavits lending support to their assertion that the court should exercise its discretion in favor of awarding greater than minimum statutory damages.

Analysis of the damages calculus begins with the willfulness of defendant's conduct.  An infringer acts willfully, within the meaning of the Act, when he or she knows or has constructive knowledge that infringement is occurring.  *Merchant Media, LLC v. H.S.M. Int'l*, No. 05 Civ. 2817, 2006 WL 3479022, at *4 (S.D.N.Y. Nov. 30, 2006); *see also Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361-62 (S.D.N.Y. 2003) ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high

probability that it was infringing plaintiffs' copyrights.") (citations omitted).

In this case, the willfulness of defendant's conduct is established both by

virtue of plaintiffs' allegations to that effect in their complaint and his failure

to appear and defend in the action. *Merchant Media, LLC*, 2006 WL

3479022, at \*5; *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172,

1173 (S.D.N.Y. 1983).  Defendant's willfulness is further established by

the fact that because neither physical nor digital copies of a motion picture

are normally distributed to the general public until the corresponding home

video release date, a fact well known among the general public, and since

that release had not yet occurred with regard to FEVER PITCH, defendant

knew, or reasonably should have known, that no authorized copies of that

copyrighted work were legitimately available to the public, and that he was

therefore participating in distribution of a pirated copy of the motion

picture.  *See* Nguyen Decl. (Dkt. No. 7-10) ¶¶ 5-7.

In determining the amount of statutory damages to be awarded, the

court must be cognizant of the expense associated with the production,

marketing and distribution of a typical motion picture.  According to

evidence currently before the court, the cost of bringing the average

motion picture to market is approximately $100 million.  *See* Nguyen Decl.

(Dkt. No. 7-10) ¶ 6.  In order to profit from such a venture, a motion picture

distributor must take advantage of the limited, available revenue-

generating opportunities which include those presented during the period when the production is in the "theatrical release" stage, at which point neither physical nor digital copies of the picture are yet available for distribution to the general public through lawful channels, and following the release of the picture in home entertainment formats, including DVD and videocassette – typically between three and six months after a theater box office opening.  *Id*.  ¶¶ 7, 8.

Interference with these revenue-generating opportunities through the premature, unauthorized distribution of pirated copies can substantially impact revenues, including theatrical revenues for a motion picture.  *See* Nguyen Decl. (Dkt. No. 7-10) ¶ 8.  When a person like the defendant in this action downloads a copyrighted motion picture without authorization, particularly during the theatrical release period, not only is the copyright owner potentially deprived ticket sale revenues, but the ability to generate profits at a later stage is greatly diluted particularly where, as in this case, the pirated, downloaded motion picture is made available on a peer-to-peer ("P2P") network for further unauthorized proliferation to customers who might otherwise view the motion picture in the theater or, at a minimum, pay to obtain or rent a DVD or other authorized home video

reproduction of the work.[5]  Nguyen Decl. (Dkt. No. 7-10) ¶¶ 9, 10.

Evidence of defendant's infringement was generated through MediaSentry, an agency engaged to monitor and identify copyright infringement of certain specified motion pictures on P2P networks.  *See* Carpenter Decl. (Dkt. No. 7-8) ¶¶ 1-3.  MediaSentry personnel were able to determine that the defendant maintains a shared directory containing a vast array of video and audio files, including motion pictures, for downloading, and that his directory contains the copyrighted works in suit, the films THE INCREDIBLES and FEVER PITCH, as well as other movies. *Id*. ¶¶ 4-6 and Exh. 1 (Dkt. No. 7-9).  According to the record before the court, the expense to plaintiffs in policing their protected rights and developing evidence of defendant's infringement in this case necessary to bring the action totaled between $3,000 and $5,000.  *See* Nguyen Decl. (Dkt. No. 7-10) ¶ 11.  This is a factor which the court may consider in deciding the appropriate amount of statutory damages to award.  *Sony Pictures Home Entm't v. Chetney*, No. 5:06-CV-227, 2007 WL 655772, at *3 (N.D.N.Y. Feb. 26, 2007) (Scullin, S.J.).

Given these circumstances, and comparing the statutory damage

---

[5]     According to one study, of the roughly nine million users on various P2P networks at any given time, nearly four million of those employ broadband technology to connect with the Internet; of those, at least five percent, or approximately two hundred thousand, actively utilize P2P networks to illegally download motion pictures. Nguyen Decl. (Dkt. No. 7-10) ¶ 10.

request in this case to other awards in similar cases, I conclude that $6,000, the amount sought, is both reasonable and necessary as a statutory damage award in order to address defendant's willful infringement and serve the twin compensatory and punitive objectives for which statutory damages were intended, and that the evidence now before the court both supports plaintiffs' request and obviates the need for a damages hearing in the case.[6] *Sony Pictures Home Entm't,* 2007 WL 655772, at *3.

## B.   Permanent Injunction

In an action such as this, the Copyright Act authorizes a court to grant a permanent injunction "on such terms as [the court] may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  Permanent injunctions are routinely awarded in favor of copyright owners whose protected works have been misappropriated in order to serve the public's interest in upholding copyright protections.  *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir.) (citation omitted), *cert. denied*, 510 U.S. 916, 114 S. Ct. 307 (1993).  Permanent injunctions are awardable as relief even in a case where judgment is entered based upon an infringer's default.  *See*, *e.g.*, *Claremont Flock*

---

[6]    In support of their application the plaintiffs have attached to their memorandum a series of court orders awarding like amounts of statutory damages in similar cases.  *See* Plaintiffs' Memorandum Exh. 2 (Dkt. No. 7-13).

*Corp. v. Alm*, 281 F.3d 297, 298-300 (1st Cir. 2002); *Motown Record Co.*, 2005 WL 2645005, at \*4; *Virgin Records America, Inc. v. Yancy*, No. 5:05-CV-370, slip op. at 7 (N.D.N.Y. Aug. 5, 2005) (Scullin, C.J.).

When a plaintiff has satisfied the requirements for entry of a permanent injunction under the Act, the prohibitions includable in such an injunction are not limited to unauthorized reproduction and/or distribution of the works in suit; instead, a permanent injunction may include a prohibition upon infringement of other works owned or licensed exclusively by the plaintiff, including any copyrighted works which may later come into existence, particularly where there is a substantial threat of continued, ongoing infringing activity. *Cf. Sony Music Entm't, Inc. v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999) ("[W]here there is a history of continuing infringement and a substantial threat of continued infringement . . . a district court ought not only to issue a broad permanent injunction protecting present works, but can protect works not yet created."); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (granting a permanent injunction against unauthorized performance of any copyrighted compensations licensed through Broadcast Music, Inc. ("BMI"), a performing rights licensing organization); *Pedrosillo Music, Inc. v. Radio Musical, Inc.*, 815 F. Supp. 511, 516 (D.P.R. 1993) (enjoining further infringement of any copyright

14

licensed through the American Society of Composers, Authors and

Publishers ("ASCAP"), also a performing rights licensing organization).  In

a case of this nature, the issuance of a permanent injunction under section

502 is appropriate upon a finding of liability for copyright infringement and

"a substantial likelihood of further infringement of Plaintiffs' copyrights."

*Motown Record Co.*, 2005 WL 2645005, at *3 (citations omitted); *see also*

*Elias*, 2004 WL 141959, at *4-*5.

In recommending the issuance of the requested permanent

injunction, I make the following findings, each of which is derived from

plaintiffs' complaint and defendant's failure to appear in the action:

1.   Plaintiffs are, and at the relevant times were, the
owners of exclusive rights under the United States
copyright laws with regard to the motion pictures
THE INCREDIBLES and FEVER PITCH,
copyrighted works which are the subject of valid
Copyright Registration Certificates, attached
collectively as Exhibit A to plaintiffs' complaint.

2.   Among the rights held by the plaintiffs is the exclusive
right to reproduce and distribute the copyrighted works to
the public.

3.   The defendant, without plaintiffs' permission or consent, has
used, and continues to use, an online media distribution
system to download the copyrighted motion pictures at issue,
and to distribute them to the public and/or to make them
available for distribution to others.

4.   There is no evidence now before the court to suggest
that the defendant has ceased in his infringing activities
or that, absent the issuance of an injunction, he would do

so.

5.    Defendant's failure to respond to plaintiffs' complaint is
      indicative of the fact that he does not take seriously the
      requirements of the Copyright Act and the unlawfulness
      of his infringing activity, and further of the willfulness of
      his conduct.

6.    Absent the issuance of injunctive relief, plaintiffs will
      continue to suffer irreparable harm, for which there is no
      adequate remedy at law.

Based upon the findings, I recommend the entry of a permanent

injunction providing as follows:

> Defendant shall be and hereby is enjoined from
> directly or indirectly infringing plaintiffs' rights under
> federal or state law in the following copyrighted motion pictures:
>
> THE INCREDIBLES and FEVER PITCH, and any other
> copyrighted motion picture, whether now in existence or
> later created, that is owned or controlled by the plaintiffs
> (or any parent, subsidiary, or affiliate of the plaintiffs)
> ("plaintiffs' motion pictures"), including without limitation
> by using the Internet or any online media distribution
> system to produce (*i.e.,* download) any of plaintiffs'
> motion pictures, or to make any of plaintiffs' motion
> pictures available for distribution to the public, except
> pursuant to a lawful license or the express authority of
> plaintiffs.  Defendant shall also destroy all copies of
> plaintiffs' motion pictures that defendant has downloaded
> on to any computer hard drive or server without plaintiffs'
> authorization, and shall destroy all copies of those
> downloaded recordings transferred onto any physical
> medium or device in defendant's possession, custody or
> control.

C.    Costs and Attorneys' Fees

16

In their default judgment motion, plaintiffs seek recovery of attorneys' fees and litigation costs.  The Copyright Act authorizes a court, in its discretion, to award costs, including a reasonable attorneys' fee, to the prevailing party in an infringement action.  17 U.S.C. § 505; *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523-24, 114 S. Ct. 1023, 1028 (1994) (citations omitted).  Fee shifting statutes such as section 505 represent a significant departure from the general "American Rule," to the effect that a litigant ordinarily bears its own costs and attorneys' fees.  *See United States v. 110-118 Riverside Tenants Corp.*, 5 F.3d 645, 646 (2d Cir. 1993) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975)).  Attorneys' fees may, in the court's discretion, be awarded to a plaintiff prevailing in a copyright infringement action by virtue of a defendant's default.  *See*, *e.g.*, *Jobete Music Co., Inc. v. Hampton*, 864 F. Supp. 7, 10 (S.D. Miss. 1994).  Since costs and attorneys' fees are routinely granted to copyright owners who have prevailed in infringement litigation, *see Kroll-O'Gara Co. v. First Defense Int'l, Inc.*, No. 99 Civ 4899, 2000 WL 369721, at *1 (S.D.N.Y. Apr. 11, 2000) (quoting *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985)), I recommend that they be awarded in this case upon a proper showing.

In their motion, plaintiffs have quantified the attorneys' fees and

costs sought at $1,787.70 and $121.13, respectively.  *See* DeNeve Decl. (Dkt. No. 7-2) ¶ 16.  Plaintiffs' request appears to be facially reasonable, and is supported by a billing statement from their attorneys of record, presumably generated from time records contemporaneously maintained – although the plaintiffs' application does not so state – reflecting the expenditure of a total of 11.10 hours of time, invoiced at rates ranging from $131.00 to $425.00, equating to an average hourly rate of $161.05.  *See id.*, Exh. 5 (Dkt. No. 7-7).  Plaintiffs' application does not, however, disclose any information regarding the professionals performing those services on behalf of its lead firm, Loeb & Loeb, LLP, and local counsel, Kernan & Kernan, P.C., including whether they are attorneys or paralegals, partners or associates, nor does it reveal their relative experience levels.  These factors are significant to the court's determination, particularly in view of the fact that plaintiffs have sought reimbursement at rates significantly higher than those generally authorized within this district.  *See*, *e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, *No.* 03-CV-502, 2005 WL 670307 at *6 (N.D.N.Y. Mar. 22, 2005) (Homer, M.J.), *adopted in full*, 419 F. Supp. 2d 206 (N.D.N.Y. 2005) (Mordue, J.).  In light of the requirement, particularly in this circuit, that a fee application be properly supported with sufficient information to inform the court's analysis as to both the hours

18

expended and a reasonable hourly rate to be applied, *see Arbor Hill Concerned Citizens Neighborhood Ass'n,* 2005 WL 67037 at *3-7, this failure could provide a basis to deny plaintiffs' application for an award of attorneys' fees, without prejudice to renewal upon a proper showing. *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11, 104 S. Ct. 1541, 1547 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *Fernandez v. North Shore Orthopedic Surgery & Sports Med., P.C.*, No. Civ. A. 96-4489, 2000 WL 130637, at *4 (E.D.N.Y. Feb. 4, 2000) (denying request for attorneys' fees for hours spent working on post-trial motions where the fee applicant failed to provide, *inter alia*, the status of attorney performing the work); *Fisher v. Town of Windsor*, No. Civ. 3:94CV02050, 1997 WL 76669, at *6 (D. Conn. Feb. 7, 1997) (denying motion for attorneys' fees where fee applicant failed to present sufficient evidence that the requested rates were consistent with the prevailing rates of similarly-situated attorneys in the community).

In order to permit the entry of a final judgment without the requirement of further submissions, I have located the information which plaintiffs should have supplied in the first instance from publicly available

19

sources, including the Loeb & Loeb, LLP website and

*www.martindale.com.*  From those sources, I have determined that of the

individuals listed on that firm's billing summaries, Alexandra N. DeNeve,

Esq.  and Christina Z. Foster, Esq. are both associates with more than

four years of experience, and Alberto Munoz and Linna Chen are

paralegals.[7]  I have also determined that plaintiff's local counsel, Kevin G.

Martin, Esq., is a partner in the firm of Kernan & Kernan, P.C. and was

admitted to practice in 1989.  Accordingly, I recommend an attorneys' fee

award based upon the following calculations.

| Name | Hrs. Worked | Hourly Rate | Total |
|------|-------------|-------------|-------|
| A.N. DeNeve | 0.7 | 150.00 | 105.00 |
| C. Foster | 0.8 | 150.00 | 120.00 |
| L. Chen | 3.5 | 80.00 | 280.00 |
| A. Munoz | .5 | 80.00 | 40.00 |
| K. Martin | 3.0 | 210.00 | 630.00 |

Total   $1,175.00

Plaintiffs' application for costs is somewhat more revealing.  Invoices

rendered by plaintiffs' lead counsel reflect expenditures totaling $64.06 for

mailing expenses, $.02 in telephone charges, and for computer research

in the sum of $21.89.   Exh. 5 to Deneve Decl. (Dkt. No. 7-7).  Invoices

rendered by plaintiffs' local counsel reveal additional expenditures of

---

[7]   I have been unable to locate information regarding T.A. Jones and N. Shah, and therefore will award no attorneys' fees associated with their time.

$35.00 for service of process and $0.16 in computerized research.  *Id.*

While the amount is not reflected in either invoice, the court takes judicial notice of the fact that in commencing this action plaintiffs were required to expend $250.00 in filing fees, and that such fees are recoverable.  *See* 28 U.S.C. § 1920(1); *DCH Auto Group Inc. (USA) v. Fit You Best Auto., Inc.*, No. CV-05-2973, 2006 WL 279055, at *4 (E.D.N.Y. Jan. 10, 2006); *see also* Fed. R. Civ. P. 54(d).  While such items as delivery charges and postage are not typically regarded as taxable costs under 28 U.S.C. § 1920, *see*, *e.g.*, *EEOC v. Allied Systems, Inc.*, No. 1:97-CV-1396, 1999 U.S. Dist. LEXIS 8878, at *4 (N.D.N.Y. June 9, 1999) (McAvoy, C.J.); *Cleveland v. North Am. Van Lines, Inc.*, 154 F.R.D. 37, 38 (N.D.N.Y. 1994) (Scullin, J.), they are recoverable under a fee shifting statute such as that invoked in this case.  *New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, No. 5:98-CV-1902, 2004 WL 437474, at *6 (N.D.N.Y. Feb. 27, 2004) (Scullin, J.). Computerized research expenses, however, are generally treated by the court as in the nature of overhead expenses, to be compensated indirectly through recovery of attorneys' fees, and thus are not authorized as reimbursable expenses.  *New York State Teamsters Conference Pension & Ret. Fund*, 2004 WL 437474, at *6; *DCH Auto Group*, 2006 WL 279055, at *3-*4.  Accordingly, I recommend plaintiffs be awarded reimbursement

21

for filing fees, in the amount of $250.00; the cost of effectuating service of

process, in the amount of $35.00; telephone expenses, in the amount of

$.02; and postage or delivery charges, in the amount of $64.06, for a total

cost award of $349.08.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

     In light of the allegations set forth in plaintiffs' complaint and

defendant's default, I recommend that plaintiffs be awarded statutory

damages in the amount of $6,000, and find that no evidentiary hearing is

required in order to make such an award.  I further find that plaintiffs are

entitled to the permanent injunction which they are now requesting, with

slight modification to restrict only defendant's infringement of any other

*copyrighted* work in addition to those now in suit, and additionally to an

award of costs and attorneys' fees.  It is therefore hereby

     RECOMMENDED, that plaintiffs be awarded, as part of the

judgment to be entered in this action, statutory damages in the amount of

$6,000.00, together with a permanent injunction in the form of that set

forth above, as well as costs and attorneys' fees in the amount of

$1524.08.

     NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e) and 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993);

　　　IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation pursuant to the court's local rules.


Dated:　　　March 20, 2007
　　　　　　Syracuse, NY




David E. Peebles
U.S. Magistrate Judge